UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------

UNITED STATES OF AMERICA

   v.             11-CR-989  (JSR)

WALTER GARCIA,

  *Defendant.*

------------------------------------------------------

**MOTION FOR SENTENCE REDUCTION
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

Avrom Robin, Esq.
Law Offices of London & Robin
99 Park Ave. PH A/Suite 2600
New York, NY 10016
tel: 212-683-8000
fax:212-683-9422
avrom@mindspring.com
a.robin@londonrobin.com

*Attorney for Walter Garcia*

October 9, 2020

By this motion Walter Garcia moves for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Garcia has about 12 years remaining on his sentence and asks for a reduction in that sentence based on the facts below.

## INTRODUCTION

Walter Garcia, a naturalized citizen of the United States, is 70 years old. He was arrested on August 16, 2011 and has been in custody since that date. He was convicted of conspiracy to commit kidnapping, kidnapping, and conspiracy to distribute cocaine after trial. Mr. Garcia was sentenced by the Court on May 29, 2012 to 280 months in custody and five years of supervised release. Mr. Garcia is presently incarcerated at FCI Loretto in western Pennsylvania, with a Bureau of Prisons ("BOP") posted release date of July 2032. Mr. Garcia has served over nine years of his sentence to date.

## BACKGROUND OF THE CASE

On February 28, 2012, following a jury trial, Mr. Garcia was convicted on three counts: (1) conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(c); (2) kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1) and (2); and (3) conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. ECF 58, 81. He was convicted for organizing a kidnapping in retaliation against someone who stole the kilograms of cocaine Mr. Garcia was selling. Fortunately, no one was injured in this extremely serious offense. The FBI ultimately rescued the victim. *See* Government's Sentencing Memorandum dated May 22, 2012, ECF 52.

At sentencing on May 29, 2012, the Court found that the total offense level was 44, pursuant to U.S.S.G. § 2A4.1, and that the applicable Guidelines range was life imprisonment.

The Court sentenced Mr. Garcia to a below-Guidelines sentence of 280 months' imprisonment to be followed by five years of supervised release. ECF 58, 64.

On April 3, 2020, after intervening direct and collateral appeals, Mr. Garcia filed a request for compassionate release because of the Covid - 19 epidemic with the Warden at FCI Loretto. On April 20, 2020 Warden V. Moser denied Mr. Garcia's request for Compassionate Release/Reduction in Sentence Consideration. *See* Exhibit A.

## PRESENT LEGAL LANDSCAPE

Mr. Garcia has exhausted his administrative remedies through application to the Warden at his facility and denial of that application. He now brings his motion directly to the Court.

The First Step Act, signed into law in December of 2018, marked the first major changes to compassionate release since 1984. This Act gave defendants the ability to go to court after exhausting administrative rights with the BOP. 18 USC § 3582 (c)(1)(A). Congress titled this portion of the First Step Act "Increasing the Use and Transparency of Compassionate Release." See P.L. 115-391 § 603(b), 132 Stat. 5194, 5239.  The statute provides:

> (1) in any case--
>
> (A) *the court*, upon motion of the Director of the Bureau of Prisons, or *upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf* or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—*
>
> i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> *****

3

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

Therefore, under 18 U.S.C. § 3582(c)(1)(A) the instant motion can be considered by the Court. Under this Section, once a defendant has exhausted his administrative remedies, a district court may reduce a defendant's sentence when (1) "extraordinary and compelling reasons warrant such a reduction," (2) the court has "consider[ed] the factors set forth in section 3553(a) to the extent they are applicable," and (3) "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." *Id.; United States v. Diego Rodriguez*, 00 Cr. 761-2 (JSR), ECF document 380, (September 30, 2020).

The Second Circuit on September 25, 2020, in *United States v. Brooker,* 2020 U.S. App. Lexis 30605*3; __ F.3d___; 2020 WL 5739712, held that the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release, without hindrance or limitation from U.S. Sentencing Guideline § 1B1.13 Application Note 1(D). The Guideline survives, but now applies only to those motions that the BOP has made. *Id.*\*17.

*Brooker* reminds us that the phrase compassionate release is a misnomer, and that 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions, which is precisely what Mr. Garcia seeks here. *Brooker.* \*1.

"A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place." *Id.* \*22., citing 18 U.S.C. § 3582 (c)(1)(A). "Beyond this, a district court's discretion in this area – as in all sentencing matters – is broad." *Id.,* citing *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc).

Other extraordinary and compelling circumstances may justify a reduction of an unusually long sentence. These arguments may also interact with the present coronavirus pandemic. *Brooker.*\*23.

## DISCUSSION

1. COVID AND THE COURTS

Your Honor's article, "Covid & the Courts" in the May 28, 2020 issue of the New York Review of Books sets the factual background for this motion regarding Covid -19. Given the information in that article, undersigned counsel will not detail in a general way the background and consequences of Covid-19 in the prisons. I will include the most recent data for Mr. Garcia's institution, FCI Loretto, from the BOP website on October 9, 2020:

| | |
|---|---|
| Inmates testing positive: | 0 |
| Staff testing positive: | 7 |
| Inmate deaths: | 0 |
| Staff deaths: | 0 |
| Inmates recovered: | 56 |
| Staff recovered: | 3 |

Loretto is listed on the BOP website as having about 800 inmates. The total number of inmates tested there so far is not available.

2. MR. GARCIA'S INCREASED RISK DUE TO AGE AND PHYSICAL CONDITION

Mr. Garcia's advanced age, hypertension and obesity provide extraordinary and compelling reasons for a sentence reduction.

Mr. Garcia will be 71 years old in January. A review of his BOP medical records raises the following health concerns:

5

1. Mr. Garcia has a long history of hypertension. A BOP Health Services cumulative report shows elevated blood pressure on three dates in 2019. A more recent report shows a blood pressure value of 148/84 on 01/14/2020. *See* Exhibit B. Notwithstanding these consistent high blood pressure ("HBP") test results, the BOP has not offered him medication for this condition.

    The American Heart Association puts Mr. Garcia's 2019 blood pressure readings in Hypertension Stage One and, for the most recent test in 2020, in Hypertension Stage Two. For Stage Two, their website says "Doctors are likely to prescribe a combination of medication and lifestyle changes." American Heart Association website, available at https://www.heart.org/en/health-topics/ high-blood-pressure/understanding-blood-pressure-readings, last visited on October 7, 2020.

2. Weight: At 195 pounds, and a height of 5'7", Mr. Garcia is considered "obese" by the BOP. *See* Exhibit C. Mr. Garcia's medical reports show his weight to be consistently in the same range over the years. He reported to me recently via telephone that his weight is now 204 pounds. Even at 195, much less 204, he is categorized as obese – the category more serious than "overweight" - by the United States Center for Disease Control ("CDC"). The CDC website says that "people who are obese are at higher risk for chronic conditions such as high blood pressure, diabetes, and high cholesterol." The website also says that "obesity increases the risk of severe illness from Covid-19." https://www.cdc.gov/obesity/adult/index.html, last visited on October 7, 2020.

3. Dental: According to BOP records, Mr. Garcia is missing 22 teeth. He has numerous implants, some of which have become loose. He has chronic periodontal issues and has

6

been prescribed various special mouth washes on numerous occasions on numerous occasions over the years he has been incarcerated. *See* Exhibit D.

4. Mr. Garcia reports arthritis in his whole body, especially in hands and knee joints. He has been given a "bottom bunk pass" by medical department at FCI Loretto, which is indicative of difficulty in mobility. His prostate cancer from 2011 in presently in remission.

### 3. COVID – 19 HAS CREATED HARSH PRISON CONDITIONS

The harsh conditions endured by Mr. Garcia and other inmates between March and the present time provide another compelling reason for a sentence reduction. Only in the past week has FCI Loretto resumed limited, not full, outside recreation activities. For almost seven months, from March until October, the institution was on partial or full lockdown, with no recreation, no dining hall for meals, no education department time, and limited time at all outside the unit for the inmates. There were no social visits. Mr. Garcia reported to me that only this week has some limited outside recreation resumed.

The temporary lifting of lock down conditions may or may not last. On October 5, 2020 Dr. Anthony Fauci stated in an interview that the U.S. is not in a good place entering the fall and winter months, a reference to the over 40,000 new cases reported each day. Our experience in the last six months has shown that positive tests in the prisons lags slightly behind but follows trends in the country at large. The New York Times reported today, October 9, 2020, that new cases in Pennsylvania, where FCI Loretto is located, have increased 46% in the last 14 days.

4.  MR. GARCIA'S REHABILITATION IN PRISON

Mr. Garcia has made a strong and consistent effort to rehabilitate by participating in programs at Loretto, and he reports no incident reports during his time in custody. He got his GED in July 2016. He has completed over 30 other programs during his time in prison, including many with the recreation department, where he has become something of an expert in officiating softball, basketball, volleyball and soccer. In his Program Review, the Loretto staff has encouraged him to enroll in Nursing Assistant Certification Class, among other classes. This is indicative of the BOP's view that he is both rehabilitating well and has good future employment potential after his release. His BOP Inmate Education Data Transcript and Program Review is attached. *See* Exhibit E.

Mr. Garcia has written a letter dated October 7, 2020, in which he tells the Court about his job in the prison recreation department. "With my work I help the prison population so that they can have some recreation. I also help the authorities to(o) so that they can provide us with some recreation. I do it for soccer, softball, football, and for any field sports that are carried out. Although today, due to the pandemic, no sports are being played; but I'm ready for when they start up again." *See* Exhibit F.[1]

5.  REENTRY PLAN

Whenever he is released, Mr. Garcia will reside with his daughter Giselle in Queens, New York. Giselle has a room for Mr. Garcia in her apartment. Her husband John is the superintendent of the large apartment house they live in and is confident he can find work for Mr. Garcia in the building. Mr. Garcia told me he has always worked, and never asked for public assistance. He looks forward to being gainfully employed again. Giselle Garcia Pena has written

---

[1] Mr. Garcia's letter was translated from the original Spanish to English by a U.S. Court certified interpreter.

to your Honor and states, "If my father would be release he would live with me, my husband and our children… my husband, John Rojas, also works as the superintendent." Giselle further states that Mr. Garcia would live with her and her family, and could help out with childcare for his grandchildren, freeing Giselle to go back to work. *See* Exhibit G. [2]

Luz Dary Garcia has written on behalf of nine family members, all of whom signed the letter, also to ask the Court to consider an early release for Mr. Garcia. *See* Exhibit G.

6. WHAT SENTENCE IS APPROPRIATE
   IN LIGHT OF THE SECTION 3553(a) FACTORS?

The nature and circumstances of the offense, and the history and characteristics of the defendant, along with the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, along with the need for the sentence to provide adequate deterrence and protect the public from further crimes of the defendant, are among the most important considerations of 18 U.S.C. § 3553(a) as relevant to Mr. Garcia.

Kidnapping is a grave offense, and Mr. Garcia was found guilty by a jury of that offense. He was further found, by the Court at sentence, to have played a leadership and organizing role in the offense. *See* Transcript of sentence, May 29, 2012, at 7. The only saving grace here is that no one was injured during the kidnapping.

The original sentence of 280 months reflected the gravity of the offense. But now, eight years after the conviction, the Court has more facts available to evaluate in reconsidering the appropriate sentence. Mr. Garcia's advanced age makes it unlikely he would ever reoffend, regardless of when he is released, especially when coupled with his strong family

---

[2] The home address of the family has been redacted from these two letters.

support and potential to work and support himself financially. His health issues are also relevant especially in light of the ongoing Covid – 19 epidemic, in that they increase his risk of serious illness if he contracts the corona virus.

Mr. Garcia's good work in prison also weighs in his favor. Deterrence, both general and specific to Mr. Garcia, is already well served here: a strong general message was sent to the public by the original sentence. A reduction of that sentence, after so many years in custody and in the present circumstances, would not weaken that strong message. He has shown through his sustained rehabilitation over the years to be worthy of a sentence reduction now.

## CONCLUSION

Mr. Garcia presents the requisite strong and compelling reasons for a sentence reduction, based on the factors above. I ask the Court to exercise its discretion and allow him to return home to his family and begin his supervised release as soon as possible.

Respectfully submitted,

*[signature]*

AVROM ROBIN

cc:   A.U.S.A. Danielle Kudla (via ECF)