UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

WALTER GARCIA,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**11 Cr. 989-01 (JSR)**

**RESPONSE OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DEFENDANT'S MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

AUDREY STRAUSS
Acting United States Attorney
for the Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Danielle M. Kudla
Assistant United States Attorney
*Of Counsel*

**Table of Contents**

I. Background ........................................ 1

A. Offense Conduct and Sentence ........................................ 1

B. Current Custody Status ........................................ 3

C. Garcia's Medical History and His Request for Compassionate Release .......... 3

II. Applicable Law ........................................ 3

III. Discussion ........................................ 5

IV. Conclusion ........................................ 8

# **Table of Authorities**

## **Cases**

*United States v. Butler*, 970 F.2d 1017 (2d Cir. 1992) .................... 4

*United States v. Butler*, No. 19 Cr. 834-10, 2020 WL 1689778 (S.D.N.Y. April 7, 2020) .................... 7

*United States v. Daugerdas*, No. 09 Cr. 581 (WHP), 2020 WL 2097653 (S.D.N.Y. May 1, 2020) .................... 4

*United States v. Daugerdas*, No. 09 Cr. 581, 2020 WL 2097653 (S.D.N.Y. May 1, 2020) .................... 7

*United States v. Ebbers*, 432 F.Supp.3d 421 (S.D.N.Y. Jan. 8, 2020).................... 5

*United States v. Garcia*, No. 18 Cr. 802-04 (CM), 2020 WL 2468091 (S.D.N.Y. May 13, 2020) .................... 7

*United States v. Lisi*, 440 F.Supp.3d 246 (S.D.N.Y. Feb. 24, 2020) .................... 5

*United States v. Monsanto Lopez*, No. 16 Cr. 643-1 (NRB), 2020 WL 2555305 (S.D.N.Y. May 20, 2020) .................... 6

*United States v. Reese*, No. 12 Cr. 629 (VM), 2020 WL 2554381 (S.D.N.Y. May 20, 2020)....... 7

## Statutes

18 U.S.C. § 3582(c)(1)(A) .................... 3, 4

18 U.S.C. § 3553(a) .................... 4, 6

The Government writes in opposition to defendant Walter Garcia's (the "defendant" or "Garcia") October 9, 2020 motion for compassionate release in light of the COVID-19 outbreak. (Dkt. 170.)[1] For the reasons set forth below, the defendant's request should be denied. While the defendant's age may place him at a heightened risk of severe illness should he contract COVID-19, the Section 3553(a) factors do not support his early release.

## I. Background

### A. Offense Conduct and Sentence

Between March 21, 2010 and March 24, 2010, Garcia and others participated in a conspiracy to kidnap an individual and hold that individual for a ransom in connection with narcotics trafficking in the Bronx. (Presentence Investigation Report ("PSR") ¶¶ 14-16.) Specifically, in early 2010, Garcia directed two individuals to travel to Texas to pick up 15 kilograms of cocaine worth approximately $450,000 and return the cocaine to Garcia in New York. (PSR ¶ 16.) On the return trip, one of the two cocaine traffickers nicknamed "Jeffrey" took the cocaine and failed to contact Garcia. (PSR ¶ 16.) On March 21, 2010, in retaliation for Jeffrey stealing Garcia's cocaine, Garcia and a co-conspirator recruited three individuals (the "kidnappers") to travel to Philadelphia to kidnap either Jeffrey or his brother nicknamed, "Kelvin." (PSR ¶ 14, 16.) In conversations with others regarding the retaliation plan, Garcia and his co-conspirator indicated that they wanted to target "Jeffrey's" family, specifically his brother, and planned to use a gun. (PSR ¶ 18.) On March 23, 2010, the kidnappers approached Kelvin on a street corner in the middle of the day and kidnapped him at gunpoint. (PSR ¶ 20.) The kidnappers

[1] "Dkt." refers to an entry on the District Court's docket for this case unless otherwise noted; "PSR" or "Presentence Report" refers to the Presentence Investigation Report prepared by the United States Probation Office ("Probation Office") in connection with the defendant's sentencing; and "Ex." refers to an exhibit filed in support of the Government's letter opposition.

placed "Kelvin" in the back of a U-Haul van and transported him to a basement in Queens. (PSR ¶¶ 20-22.) Over the course of the evening on March 23, 2010, Garcia was in contact with "Jeffrey" on numerous occasions to work out a ransom in exchange for "Kelvin's" safe return. (PSR ¶¶ 15, 23.) Essentially, Garcia and his co-conspirator told "Jeffrey" that they would release "Kelvin" in exchange for the cocaine that "Jeffrey" stole. (PSR ¶ 23.) On or about March 24, 2010, law enforcement agents ultimately located and freed "Kelvin." (PSR ¶¶ 16, 24.) Following the botched kidnapping, Garcia complained to another individual about how "Jeffrey" had gotten people arrested and indicated that "Jeffrey" had to be killed. (PSR ¶ 27.)

On February 28, 2012, following a jury trial, Garcia was convicted of conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c) ("Count 1"); kidnapping, in violation of 18 U.S.C. § 1201(a) ("Count 2"); and conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 ("Count 3"). (*See* Minute Entry Feb. 28, 2020.)

On May 29, 2012, the defendant appeared for sentencing. Based upon a calculated offense level of 44 and a criminal history category I, Garcia's applicable Guidelines sentencing recommendation was life imprisonment. (PSR ¶ 94; Sent. Tr., attached hereto as Ex. A, 12:13-16.) The Court sentenced Garcia to concurrent terms of 280 months' imprisonment on Counts 1 through 3, to be followed by a total of five years of supervised release. (Dkt. 58.) In reaching this determination, the Court noted, among other things, that the evidence at trial showed that Garcia organized the kidnapping, and essentially "wanted to murder the people who stole his drugs or their family, forget about even the immediate person who was giving him a problem[.]" (*See* Ex. A 15:23-16:8.)

**B. Current Custody Status**

Garcia is currently housed at FCI Loretto, a low security federal correctional institution in Loretto, Pennsylvania. Garcia's projected release date is July 18, 2032. According to the Bureau of Prison's (the "BOP") website for COVID-19 cases, at FCI Loretto, there are currently no positive inmates, seven positive staff members, zero inmate or staff deaths, 56 recovered inmates, and three recovered staff members. (*See* https://www.bop.gov/coronavirus/index.jsp, last accessed October 16, 2020.)

**C. Garcia's Medical History and His Request for Compassionate Release**

As set forth in Garcia's motion seeking a sentencing reduction, Garcia claims that he is at increased risk of severe illness from COVID-19 due to his age, obesity, and hypertension, and that he suffers generally from other conditions, including periodontal issues and arthritis. Based on a review of Garcia's BOP medical records, the defendant is 70-years-old and has a body mass index ("BMI") most recently recorded on or about May 13, 2019 as 30.54.[2]

On April 3, 2020, Garcia filed a request with the warden at FCI Loretto for compassionate release. On April 20, 2020, Garcia's request was denied because he has only served 32.7% of his federal sentence, and his concern about contracting COVID-19 did not currently warrant an early release.

## II. Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court "may not modify a term of imprisonment once it has been imposed except" as provided by statute. As relevant here:

---

[2] Garcia's BOP medical records also confirm that he had reported incidents of high systolic blood pressure in 2019 and high systolic and diastolic blood pressure in 2020 and suffers from dental issues.

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) .

As the proponent of the motion, the defendant bears the burden of proving "extraordinary and compelling reasons" exist under the above criteria to justify early release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

Whether such "extraordinary and compelling reasons" exist, however, is only "[t]he threshold question." *United States v. Daugerdas*, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *2 (S.D.N.Y. May 1, 2020) (Pauley, J.). "[T]his Court's analysis does not end with a finding that 'compelling and extraordinary reasons' warrant compassionate release. This Court must also 'consider[] the factors set forth in section 3553(a).'" *Id.* at *4.

Those § 3553(a) factors include, among others:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct; [and]

> (C) to protect the public from further crimes of the defendant . . . .
> 18 U.S.C. § 3553(a).

18 U.S.C. § 3553(a).

Application of the § 3553(a) factors requires an assessment of whether the relevant factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." *United States v. Ebbers*, 432 F.Supp.3d 421, 430-31 (S.D.N.Y. Jan. 8, 2020); *see also United States v. Lisi*, 440 F.Supp.3d 246, 253 (S.D.N.Y. Feb. 24, 2020) (finding compelling reasons warranting defendant's release but nevertheless denying motion for compassionate release because § 3553(a) factors "weigh[ed] heavily against [a] reduction of [defendant's] sentence"). "Court[s] should be wary of using [a] motion [for compassionate release] to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences . . . ." *Ebbers*, 432 F.Supp.3d at 431.

**III. Discussion**

The defendant satisfies the "extraordinary and compelling reasons" inquiry for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i). The Centers for Disease Control and Prevention ("CDC") has identified risk factors that place individuals at higher risk of severe outcomes from COVID-19. Those factors include older adults and a BMI over 30, which is confirmed by the Garcia's most recent medical records.[3]

[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html; https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html. Although the defendant's medical records indicate that he has had incurred certain high blood pressure readings in 2019 and 2020, there is no indication that BOP medical professionals have confirmed that he suffers from chronic high blood pressure, which "might" place individuals at higher risk of severe outcomes from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical

But that is not the end of the analysis. Here, the relevant factors under § 3553(a) weigh against an approximately 12 year reduction in his sentence.

As for the "nature and circumstances of the offense" and "the need for the sentence" "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," §§ 3553(a)(1), (2)(A), Garcia organized and recruited individuals to kidnap an innocent victim because the victim's brother stole approximately $450,000 worth of cocaine from Garcia. The victim was kidnapped at gunpoint and transported from Philadelphia to a basement in Queens where Garcia and his co-conspirator attempted to negotiate a ransom—the stolen cocaine for the victim's life. As the Court concluded, Garcia helped direct and lead the kidnapping plan, which involved targeting the family of the individual who wronged Garcia. (Ex. A 15:25-16:6.) Based on the circumstances of the offenses and the evidence presented at trial, the Court determined that a sentence of 280 months' imprisonment was warranted. (Ex. A 29:5-16.) The sentence imposed appropriately reflects the seriousness of Garcia's conduct and provides just punishment for his actions.

This Court properly took account of the § 3553(a) factors when it sentenced the defendant to 280 months' imprisonment. Reducing the defendant's sentence to time served, when he has nearly twelve years left to serve, would minimize the severity of the defendant's actions, which involved a gunpoint kidnapping that stemmed from a large-scale narcotics distribution dispute. During the COVID-19 pandemic, courts in this District have repeatedly denied motions for reductions in sentence on § 3553(a) grounds despite the possible presence of "compelling and extraordinary reasons" where the offense involved violent or serious conduct or where the

---

conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

defendant had multiple years left to serve on his sentence. *See e.g.*, *United States v. Monsanto Lopez*, No. 16 Cr. 643-1 (NRB), 2020 WL 2555305, at *1 (S.D.N.Y. May 20, 2020) (Buchwald, J.) (denying compassionate release where defendant had 68 months on his 135-month sentence); *United States v. Reese*, No. 12 Cr. 629 (VM), 2020 WL 2554381, at *2 (S.D.N.Y. May 20, 2020) (Marrero, J.) (denying compassionate release where the defendant was involved in a serious and sophisticated crime that harmed numerous victims over a substantial period of time); *United States v. Garcia*, No. 18 Cr. 802-04 (CM), 2020 WL 2468091, at *5-6 (S.D.N.Y. May 13, 2020) (denying compassionate release to defendant with asthma, hypertension, and a heart condition housed at Fort Dix based, in part, nature of the offense conduct and on the length of time left to serve on defendant's 72-month sentence); *United States v. Daugerdas*, No. 09 Cr. 581, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (denying compassionate release where the defendant was involved in a large-scale fraud scheme with multiple victims); *United States v. Butler*, No. 19 Cr. 834-10, 2020 WL 1689778, at *2 (S.D.N.Y. April 7, 2020) (denying compassionate release where criminal history and offense conduct involved violent offenses). This Court should do the same here.

[INTENTIONALLY LEFT BLANK]

## IV. Conclusion

The Court should deny the defendant's motion because the Section 3553(a) factors counsel against a reduction in his sentence.

Dated: New York, New York
October 16, 2020

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By: /s/ Danielle M. Kudla
Danielle M. Kudla
Assistant United States Attorney
(212) 637-2304
Danielle.kudla@usdoj.gov

cc: Avrom Robin, Esq.
*Counsel for Walter Garcia*