# Exhibit A

C5TJGAR1                    Sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          11 Cr. 989 JSR

5   WALTER GARCIA,

6              Defendant.

7   ------------------------------x

8

9                                    May 29, 2012
                                     5:24 p.m.
10

11  Before:

12                  HON. JED S. RAKOFF,

13                                   District Judge

14

15                  APPEARANCES

16  PREET BHARARA,
         United States Attorney for the
17       Southern District of New York
    DAVID MILLER,
18  KAN MIN NAWADAY,
         Assistant United States Attorneys
19

20  PRYOR CASHMAN, LLP
         Attorneys for defendant Garcia
    BY:  ROBERT WILLIAM RAY, Esq.
21       MADELON ANNE GUATHIER, Esq.
                  Of counsel
22

23  Also Present:
         NANCY FESTINGER, Official Certified Spanish Interpreter
         DAVID MINTZ, Official Certified Spanish Interpreter
24

25

C5TJGAR1                      Sentence

1            (In open court)

2            (Case called)

3            THE COURT:  Good afternoon.  Please be seated.

4            All right.  We're here for sentence.  Let me first

5     find out from defense counsel whether the defendant has read

6     and discussed with counsel the presentence report?

7            MR. RAY:  We have, your Honor.  Mr. Garcia has

8     received the presentence report.  I have reviewed it with him.

9     We have filed various objections to that report.

10           THE COURT:  Yes.  I'll get to that in a minute.  I

11    want to make sure he and you have reviewed it?

12           MR. RAY:  Yes.

13           THE COURT:  Are there any objections other than those

14    that you've already put forth in writing?

15           MR. RAY:  I do not believe so, no, your Honor.

16           THE COURT:  We'll get to those in a minute.  Any

17    objections from the government?

18           MR. MILLER:  None from the government, your Honor.

19           THE COURT:  I think the two objections we need to deal

20    with in terms of the guideline calculation are:

21           First, with respect to Paragraph 40, the defense

22    objects to the increase of four levels based on Garcia being an

23    organizer or leader of criminal activity that involved five or

24    more participants, and specifically the allegation is that

25    Garcia and Batista, who if I recall correctly, didn't get this

C5TJGAR1                         Sentence

1    four level increase from one of my colleagues.

2                MR. MILLER:  Correct, your Honor.

3                THE COURT:  Recruited Parra-DeJesus, Kenny Vargas and

4    Jose Urena to travel to Philadelphia to Kidnap the victim or

5    his brother.  I am inclined to give that increase, but let me

6    hear from defense counsel if there is anything more he wants to

7    say about that?

8                MR. RAY:  Your Honor, we made that a principal

9    objection in the written objections to the presentence report

10   and have also submitted, as I know your Honor has received, a

11   sentencing submission to that effect.

12               THE COURT:  Yes.

13               MR. RAY:  I don't need to be repetitive late in the

14   hour this evening, but I do wish to point out that, so that the

15   record is clear, we made a distinction, and this will come up

16   later in the argument, about where we were prepared to go as

17   part of a proposed plea bargain, a proposed stipulation Mr.

18   Garcia was, in fact, the organizer or leader of narcotics

19   trafficking activity, but not with respect to the kidnapping.

20               It makes a significant difference here because the

21   base offense level and adjustment for ransom with regard to the

22   kidnapping guidelines are so much higher than would otherwise

23   be the case with regard to the narcotics trafficking

24   guidelines.

25               Having said that, and I realize it is a fine

C5TJGAR1                          Sentence

1    distinction, let's go to the facts presented at trial.  Who

2    brought in all of these other people to the kidnapping

3    conspiracy?  Not my client.  The witnesses were quite clear as

4    to who was responsible for those other participants in the

5    conspiracy.

6          Marco Batista brought those individuals in.  He

7    brought those individuals in for a purpose, which was to commit

8    the violence aspect of a violent crime, holding weapons, taking

9    the victim, holding the victim with the use of weapons,

10   transporting the victim in a car which was the same vehicle

11   that was used to conceal the weapons in the first place, the

12   Ford Explorer which had the trap, all in Marco Batista's car.

13         It is Marco Batista together with these other people

14   who are the ones responsible for what actually transpires,

15   i.e., the kidnapping and the act of violence itself.  This was

16   not something that my client did.  My client was involved, as I

17   think the testimony --

18         THE COURT:  No.  The question is not whether he did

19   it; the question is whether he helped to organize the group

20   that did it.

21         MR. RAY:  I think that is fair, but I think in that

22   regard, to answer your Honor's question, he held Marco Batista

23   accountable for losing drugs or letting drugs go that weren't

24   paid for, and I think it is probably fair from the testimony to

25   characterize that as Marco Batista would have to do something

C5TJGAR1                         Sentence

1    about it.

2               THE COURT:  Like murder!

3               MR. RAY:  Well, it wasn't clear what was to be done

4    about it except that he was the one that he looked to because

5    he was the one who had the drugs and brought all of these other

6    people in that my client didn't know.  In that sense Marco

7    Batista was responsible for this deal, but the narcotics came

8    from a supplier, and Marco Batista was a substantial narcotics

9    trafficker in his own right.

10              THE COURT:  Let me hear from the government.

11              Thank you.

12              MR. MILLER:  Thank your Honor.

13              Your Honor, as we set forth in our submission and as

14   your Honor, of course, heard from the testimony at trial, Mr.

15   Garcia was, like Mr. Batista, an organizer not only with

16   respect to the narcotics activity but the kidnapping activity.

17              Even if he wasn't the one who specifically went to

18   Kenny Vargas, for example, and said you want to come help me

19   grab this guy in Philadelphia -- and Mr. Vargas did that

20   because he had dealt with Mr. Batista in the past and knew

21   there were benefits to doing that -- that doesn't mean he

22   wasn't a leader of this kidnapping conspiracy.

23              We know, for example, from the testimony of Felix

24   Tineo, which the government would submit was credible, that Mr.

25   Garcia, in Mr. Tineo's presence, in Mr. DeJesus' presence and

C5TJGAR1                         Sentence

1    certainly with Mr. Batista, held Mr. Batista to account for

2    things, said basically this is your fault, made reference to

3    the fact that they would if necessary have to kill either the

4    victim or the individual who stole the drugs, and set in motion

5    the entire kidnapping conspiracy which he actively participated

6    in by going to Philadelphia.

7           He wasn't some passive passenger during this entire

8    kidnapping conspiracy.  It was his drugs, and Mr. Batista was

9    going to get a cut of that.  Mr. Batista worked for Mr. Garcia

10   and knew he better do what Mr. Garcia said, and he did it.  Mr.

11   Garcia, as you may remember, when they went to rent the U-Haul

12   truck, Mr. Garcia and Mr. Batista basically directed others to

13   go and put some money on the Citibank card, which Mr. Urena

14   did.

15          Parra-DeJesus rented the U-Haul truck and Mr. Batista

16   and Mr. Garcia sat and ate in a Subway shop while this was

17   happening because they were the ones who set the others in

18   motion to do the kidnapping.

19          Mr. Batista surely was present in the basement during

20   the evening when Mr. Garcia was not, but that certainly does

21   not make him any less of a leader merely because he wasn't

22   present for the entire evening in the basement.  So I know your

23   Honor's very well aware of the facts.

24          THE COURT:  This is not a case where I have to have a

25   Fatico hearing because the trial provided me with all of the

C5TJGAR1                        Sentence

1    relevant facts.  I understand the defense position, put forth

2    as always with considerable eloquence and skill, but I find the

3    facts that were before me that the evidence was certainly more

4    than a preponderance of the evidence that Mr. Garcia played a

5    leadership and organizing role in the kidnapping, so I accept

6    the four-point adjustment.

7            Now, a different question, one I think is much more

8    difficult, is whether this should be the unusual case where

9    even though the defendant went to trial, that there should be

10   an adjustment for acceptance of responsibility.

11           What makes that difficult is that in the sealed

12   proceedings that the government, of course, did not have access

13   to that preceded the trial when there was a question raised by

14   the defendant regarding counsel, he effectively admitted his

15   guilt except for the gun counts.  Of course, it was the gun

16   counts he was acquitted on.

17           On the other hand, he chose -- presumably because for

18   appeal purposes -- not to make any public statement when he was

19   interviewed by Probation or otherwise.

20           So in one sense he's accepted responsibility in a very

21   unusual way in a sealed proceeding, and in another way he has

22   not shown acceptance in any public way.  For sure he's not

23   entitled to the third point for acceptance of responsibility

24   because that point relates to whether or not he saved the

25   government from having to go to trial, which he clearly did

C5TJGAR1                    Sentence

1    not.  So we're talking here I think two points at most.

2              So let me hear from defense counsel and government

3    counsel on this.

4              MR. RAY:  Well, I would say with regard to the third

5    point, I guess I take the point in the sense that there was a

6    trial.  On the other hand --

7              THE COURT:  The third point is really designed if

8    you're going to save the government from its resources, its

9    time and all things like that.

10             MR. RAY:  I don't want to belabor it.  Our point all

11   along in connection with arguing for this unusual exceptional

12   deduction even in the event of a trial was essentially to put

13   the defendant back in the same position he would have been if

14   he had gotten the plea offer frankly that we submit should have

15   been extended.

16             THE COURT:  But that is not the test.

17             I doubt you can show me anything that tells me that's

18   the test.  Moreover, it is not like the situation which does

19   arise under the guidelines where someone after being convicted

20   at trial admits, publicly admits and accepts his guilt.  He has

21   tried to have it both ways, which I fully understand.  I am not

22   faulting him for that, but it's not at all what the guidelines

23   contemplate.

24             MR. RAY:  On the trying have it both ways part, even

25   if the sealed portion were unsealed, and although this still

C5TJGAR1                    Sentence

1    presents some problems under the guidelines, it is clear that

2    he was accepting responsibility for what at least he believed

3    he did based upon what the offer extended was at the time which

4    included only a narcotics conspiracy count and a firearms

5    count.

6              I don't think Mr. Garcia has any problem about that,

7    that record being unsealed.  The problem is to turn what

8    otherwise was nonpublic into public.  The problem he is --

9              THE COURT:  Wait.  Take this one step at a time.  Do

10   you want this sealed record unsealed?

11             MR. RAY:  If I may have a moment?

12             THE COURT:  Of course.

13             (Off-the-record discussion)

14             MR. RAY:  No, your Honor, I think, having consulted

15   with my client, I perhaps spoke too soon.  I think he wants to

16   preserve the sealed record, and so we are going to be left with

17   arguing from the public record.

18             THE COURT:  So in the public record I don't see any

19   indication of acceptance of responsibility.

20             MR. RAY:  Well, as you have correctly recognized, the

21   difficulty is he is faced with a sentencing guidelines

22   calculation which is life, a recommendation which the

23   government proposes should be a sentence your Honor imposes, a

24   recommended sentence from the U.S. Probation Office, which is

25   300 months or 25 years, and in any event, even under my

C5TJGAR1                              Sentence

1    calculation and proposal to the court, between 210 and 228

2    months.  It is a significant thing indeed for the defendant to

3    essentially waive whatever rights he might have on appeal by

4    accepting responsibility now.

5         THE COURT:  I am not sure it waives -- it certainly

6    doesn't waive his right of appeal.

7         MR. RAY:  No.  The word I used was, "Jeopardize."

8         THE COURT:  It might impact, I grant you that, and so

9    I am perfectly happy with your decision.  Your client should

10   know this, if this is any solace to him, there is probably no

11   judge in this Court who is less enamoured of the guidelines

12   than this one, but I still am required by law to calculate

13   them.  So, but on that record I don't think you have any ground

14   really for saying acceptance of responsibility once that record

15   is sealed or remains sealed.

16        MR. RAY:  I guess except what is not sealed is his

17   willingness, since he signed the plea agreement, to have

18   entered a plea if the plea had not included the gun charge.

19        Whatever his statements may have been about, you know,

20   affirmatively acknowledging and accepting his responsibility,

21   there is no question his actions are just as significant, and

22   the guidelines make the point particularly in this context,

23   when a court considers post-trial whether or not acceptance of

24   responsibility in the unusual case should be granted to focus

25   specifically on pretrial positions with regard to that issue,

C5TJGAR1                          Sentence

1    not whatever the defendant may have said after a jury's verdict

2    has been rendered against him.

3         THE COURT:  I hear all of that but, on the other hand,

4    in the normal situation if there was an acceptance of

5    responsibility, the court would have a full colloquy.  I leave

6    this to the Probation Office when I can, but for whatever

7    reason the defendant doesn't want to talk to the Probation

8    Office, which is totally his right, but he still wants an

9    acceptance of responsibility.

10        Now I will have a colloquy with him.  For example, I'd

11   be asking your client all sorts of things about the events, the

12   underlying events which you tell me, but I infer from what you

13   just said about keeping the record sealed, he is not about to

14   want to answer all of that, and I won't hold that against him

15   in any way, shape or form.

16        MR. RAY:  I want to be clear, your Honor, his decision

17   is that he will not answer those questions.  I don't want to

18   belabor the point.

19        THE COURT:  I don't think the mere fact he signed that

20   agreement is an adequate factual basis on all of these facts

21   and circumstances to give him credit for acceptance of

22   responsibility.

23        MR. RAY:  I will add, since it is a significant point,

24   that the posture that Mr. Garcia takes, it should be noted, is

25   contrary to the advice of counsel.

C5TJGAR1                    Sentence

1        I have labored, but it is ultimately his decision to

2   understand the distinction between just the issue that your

3   Honor faces on the one hand, a close call where a court might

4   otherwise be willing in the exception case of this one, to

5   grant acceptance of responsibility credit, but the defendant

6   can't have it both ways.  He will have to acknowledge now he is

7   responsible and the court will give consideration, but if he

8   declines to do so in order to preserve what he believes is a

9   justifiable appeal and to not run that risk, that certainly is

10   his right to do so, but it comes as some consequence.

11        THE COURT:  That is fair enough.  I am glad you placed

12   all of that on the record.

13        So the court concludes that the total offense level is

14   44, the criminal history category is I, and the guideline range

15   which is not binding on the court but which the court must

16   consider is life in prison.

17        However, the Probation Office recommends 300 months,

18   and it is certainly notable that though every sentence is

19   different and must be considered on its own terms, that Judge

20   Sullivan, yes, sentenced Marco Batista to 244 months of

21   imprisonment and Judge Scheindlin sentenced Parra-DeJesus to

22   144 months of imprisonment, both of which were non-guideline

23   sentences.  So that has to be taken into account by the court

24   as well.

25        So on what the sentence should be under Section 3553

C5TJGAR1                         Sentence

1    (a), let me hear first from defense counsel, then from

2    government counsel, and then from the defendant if he wishes to

3    be heard.

4          MR. RAY:  Your Honor, under 3553 (a), one of the

5    significant factors to be considered, obviously not the only

6    one, I think it bears emphasis on precisely this determination,

7    is to avoid unwarranted sentencing disparities, the keyword

8    being "unwarranted," and although I understand your Honor has

9    passed upon supervisory adjustment under the guidelines, I

10   think the role with regard to my client's involvement in the

11   offenses that led to his conviction is still nevertheless

12   germane to this determination from the standpoint of arriving

13   at an appropriate sentence and in consideration of the variance

14   factors.

15          I say that also mindful how we find ourselves in this

16   place in the first place, which is to say, it wasn't that long

17   ago when the guidelines were enacted and first came into

18   regular use in courthouses throughout this district, but the

19   difference between going to trial and pleading guilty was

20   largely two offense levels, and a conviction typically meant

21   the difference between the bottom and the top of the originally

22   set guideline range to which the defendant would have been

23   entitled as a result of his guilty plea.

24          A long way away from that, and I am not suggesting it

25   is not appropriate for the Congress and Sentencing Commission

C5TJGAR1                        Sentence

1   to stray from that original intent, but just for the sake of

2   disparity, look at where we find ourselves.  Mr. Garcia would

3   have been in the range of somewhere in the neighborhood of 195

4   to 228 months even if he pleaded guilty to the gun charge on

5   the offer that the government originally made.  He declined for

6   reasons that I think we now know were good ones.  He didn't

7   want to plead something to something he didn't do.  He rejected

8   that offer.

9            Going to trial means he faces a guideline sentence of

10  life and sentencing calculation of 300 months with a principal

11  co-defendant responsible for really the violent aspect of the

12  kidnapping, who got a sentence of 244 months.

13           THE COURT:  So I agree largely with what you're saying

14  there in the sense that here, as in so many places, I find the

15  guidelines very difficult to justify, to understand what began

16  as an attempt to do away with disparities has led to all sorts

17  of disparities, many of them inexplicable.

18           The one you're focusing on is if you might say the

19  historical disparities, for example, between 1987 and the

20  present, the guideline calculations for someone who commits a

21  fraud of a million dollars and has no prior criminal offense

22  has increased under the guidelines 500 percent.

23           Has the crime charged changed so dramatically in 20

24  years that it is five times worse than the Sentencing

25  Commission thought it was in 1987?  That is preposterous.

C5TJGAR1                        Sentence

1

2          MR. RAY:  Although public sentiment apparently has

3   changed.

4          THE COURT:  The public sentiment has a role to play,

5   but the last I heard law, justice and reason were supposed to

6   be what guided all of us.  Along the lines of what you're

7   talking about, where does the Sentencing Commission get these

8   numbers two points here, four points here, three points there?

9   They pick them out of thin air.  They never offer the slightest

10  rationale, but they always justify them because they're this

11  year's attempt to avoid disparities.

12         Perhaps one of the worst things about the guidelines

13  is they focus much more narrowly on the relevant factors than

14  does Section 3553 (a), which is the overriding guiding message

15  guiding, as the Supreme Court has so eloquently noted, the

16  guidelines are just one aspect of this.

17         To make that one aspect which plays a secondary role

18  even in the wording of Section 3553 (a) such a mantra, such a

19  blind prescription that the government feels so compelled to

20  adhere to in all but the most exceptional cases is what is

21  again to substitute non-think for reason.  So you don't need to

22  convince me about the guidelines.  What you need to convince me

23  is -- and I think you may have some difficulty -- is that Mr.

24  Garcia is not a very bad man.

25         The proof of it, in addition to the overall situation

C5TJGAR1                          Sentence

1    that he found himself in and that he helped in the court's view

2    organize and direct and lead, is that I read many of his

3    statements as saying he wanted to murder the people who stole

4    his drugs or their family, forget about even the immediate

5    person who was giving him a problem, we're drug dealers, let's

6    go after the family, let's murder them, too.  I am overstating

7    it, but that's the thrust that comes out loud and clear, it

8    seems to me, from a lot of the evidence in this case.

9            It is hard to gel that with the kind of sentence

10   you're proposing.

11           MR. RAY:  I will say that was different from

12   cooperating witnesses, the best evidence of where he stood on

13   that, though, I think remains in the tape recordings and

14   transcripts themselves in which the subject comes up by the

15   brother of the victim on one occasion, and the implication

16   being, you know, what if I, you know, what if I don't come up

17   with what you're after, what are you going to do to my brother?

18           And Mr. Garcia is on the telephone saying or denying

19   that it meant what the person on the other end of the phone was

20   concerned about, which is you're going to kill me.  He says no,

21   no, no, no, not that at all.  Look, what the truth is between

22   that and whatever those witnesses testified to at trial, I know

23   your Honor has a record, I was there, I heard it, too.

24           I would suggest, your Honor, be careful about that and

25   Mr. Garcia is on that phone, too, I think insistent that this

C5TJGAR1                    Sentence

1    be taken care of, but don't think Mr. Garcia was prepared to go

2    there, I submit to you.  It also was true, unquestionably true,

3    Mr. Garcia was not responsible for the people that were brought

4    into this thing including the people with guns.  That was Mr.

5    Batista's role.  That is what he did.

6            I understand your Honor's made a finding about leading

7    and supervising this activity and about bringing --

8            THE COURT:  You're saying in a more narrow sense.

9            MR. RAY:  I am saying in a more narrow sense.  I

10   understand there is an accountability here for the kidnapping

11   and conspiracy charge.  I am talking about the aspect of the

12   conspiracy directed simply to the question of the ability,

13   preparation for and willingness to use violence and threats

14   pertaining thereto, and I think if you examine carefully this

15   record, I don't think there is enough of a record here to make

16   a finding, however, you want to characterize it, about my

17   client being a very bad man, meaning somebody prepared to kill

18   in order to get what he wanted here.  I don't think that is Mr.

19   Garcia.  In any event, if I can make one more large argument

20   about the guidelines and I am done with it.

21           I am not here to argue for leniency under the

22   kidnapping guidelines for all offenses.  I am here representing

23   my client.  That is all I should be doing.  There is another

24   principle of the guidelines, and that was that the guidelines

25   at least in the main are designed to yield sentences at or near

C5TJGAR1                        Sentence

1    the statutory maximum when the defendant's prior criminal

2    history warrants it.  The government can make whatever

3    arguments they can to make why my client doesn't have a prior

4    criminal.

5              He is a 62-year-old man and U.S. Citizen, never been

6    previously convicted of an offense.  He has one charge in

7    Queens that I will deal with at the conclusion.  There is one

8    aspect your Honor should consider I made in the sentencing

9    submission I made for downward departure so he can get credit

10   for 11 months in state custody he otherwise won't get credit

11   for.

12             This is one of the strange aspects of joint federal

13   state things.  If your Honor doesn't give him credit for that

14   11 months worth of time, nobody else can.  Even if the state

15   judge later on decides you know what, I think he suffered

16   enough, I will order his time run concurrently, a state judge

17   doesn't have the power to do that.

18             THE COURT:  I think we need to take that up, but I

19   agree with you, that is the end of the -- the tail wagging the

20   dog, so to speak.

21             MR. RAY:  Right.  I have bigger things to worry about.

22   I have a potential life sentence here, 300 month

23   recommendation.  I would suggest my second point, in addition

24   to just the aspect of the kidnapping guidelines which I think

25   are excessive as applied to Mr. Garcia, I think there is a

C5TJGAR1                          Sentence

1    particular aspect of it being excessive.  He doesn't have a

2    prior criminal record.  Somebody without a prior criminal

3    record except for the extraordinarily unusual case should not

4    be facing under the guidelines life imprisonment.  That is not

5    generally how it is supposed to work.

6              I can imagine a particularly --

7              THE COURT:  Actually, you see, the irony is that it

8    happens all the time these days and not just in violent cases

9    and not just -- and many fraud cases involving people with no,

10   unquestionably no prior criminal activity because in the fraud

11   area sentences are driven by the amount of the fraud.

12             In a case I had that is somewhat well known or

13   infamous in the government's eyes, the Adelson case, the

14   guideline range for Mr. Adelson, a white collar criminal with

15   no prior convictions was life in imprisonment.  The statutory

16   maximum was 80, so the government took a more modest view than

17   if he had -- since he was 40 years' old, the government

18   figured, you know, you cap give him 80 years and he still might

19   get out at the age of 120.

20             And in narcotics cases where it is the weight of the

21   drugs that most drives, you'd be surprised how many people

22   without a prior conviction have a guideline range of life

23   imprisonment.  I think you're beating a dead horse.  It is not

24   the guidelines that is driving this sentence.  I hope I've made

25   that clear.  It is the factors under Section 3553 (a).

C5TJGAR1                              Sentence

1          If, for example, a fair reading of the evidence is

2     that your client did intend not only to Kidnap but to murder if

3     necessary not just the person he was after but even members of

4     his family, assuming hypothetically that were the case, life

5     imprisonment would not be farfetched at all.

6          I was a little taken aback by the comments of my very

7     excellent and much respected colleague, Judge Scheindlin, who

8     suggested in her sentence that basically when your victim is

9     someone involved in the narcotics trade, it is not the same.

10    The last I checked, a human life is a human life.

11         MR. RAY:  Your Honor may note that if it is not

12    obvious by implication, I will tell you explicitly that was not

13    a place I was prepared to go.

14         THE COURT:  I didn't anyway.  Let me me shut up.

15         MR. RAY:  The 3553 (a) factors I suggest, your Honor,

16    should appropriately conclude on the evidence my client was

17    more than willing to threaten in order to accomplish the

18    objective of the kidnapping conspiracy, but I would submit to

19    you that he was not prepared to carry that out.  I believe that

20    is supported by the taped transcripts.

21         There is a distinction between threatening bad things

22    and actually being someone who is prepared to use the means to

23    carry that out.  As I suggested to your Honor before, I don't

24    believe that that is my client.  I think he was insistent this

25    had to be resolved, and he had to answer to other people to

C5TJGAR1                          Sentence

1    make sure that it was resolved, but I don't think murder was a

2    place he was prepared to go.  He was prepared to threaten in

3    order to carry out his objective because I think that is what

4    the trial evidence supports, but I don't think a further

5    finding beyond that is warranted, and I would suggest under

6    3553 (a) that that is a distinction with a difference that your

7    Honor should credit.

8            I think further that my client is 62 years' old, he

9    suffers from cancer.  My understanding, I don't know the

10   specific results, but that at least in part prostate cancer has

11   returned in the sense it has spread.  He otherwise is not in

12   great health.

13           That is a factor, I understand not the only factor to

14   be considered, but in weighing what an appropriate and

15   fashioning an appropriate sentence here, obviously if the

16   sentence your Honor imposes is effectively tantamount of life,

17   my client's view is what is the difference.  I don't believe he

18   will survive, as I argued in the sentencing memorandum, a

19   sentence longer than what I had imagined before, which would be

20   the top, in the neighborhood of 240 months.

21           Again I don't subscribe to views about why this case

22   should be treated differently because of the nature of the

23   victims, but on the other hand, remember the enhancements here

24   come at a base offense level of 32 for any kidnapping offense

25   and plus 6 as a result of the fact a ransom was demanded, which

C5TJGAR1                    Sentence

1   in this case was either the drugs or money for the drugs.

2   Those are the relevant factors to be considered.

3          I think also some weight should be given, part of it

4   by virtue of Criminal History I, but there has to be a

5   recognition here this man came from Colombia, has a family, has

6   7 children, has lived in the United States in an otherwise

7   law-abiding life, is a U.S. Citizen, has paid taxes, had a

8   business, lost a business, you know.

9          This is one man who is of some talent and of some

10  education who has made a life for himself and his family, as I

11  believe the letters that your Honor has received from family

12  members and friends reflect, and I understand your Honor gets

13  letters similar to that.

14          THE COURT:  Believe me, those were important letters

15  and I was very, very pleased you submitted them and I was moved

16  by a number of them.

17          MR. RAY:  I have nothing more than that.

18          THE COURT:  Let me hear from the government.

19          MR. MILLER:  Thank your Honor.

20          A few points, your Honor.  I would like to address the

21  3553 (a) factors in a second, your Honor, but if I may just to

22  preserve for the government's argument if there is an appeal on

23  the record, with respect to, and this is a little unorthodox,

24  but this has been raised by the defense regarding plea

25  discussions.  It is important to note, as we did in our

C5TJGAR1                          Sentence

1    submission that even after it became clear, putting aside what

2    happened in the sealed proceedings which we the government do

3    know not about, but putting that aside for a moment, we, in

4    fact, offered just the narcotics conspiracy and the kidnapping

5    charges to the defendant.

6              This was a plea agreement that was submitted on

7    February 22nd after the government opened and the defense

8    rejected it.  They may have rejected it because they didn't

9    like the guidelines.  That is fine.  It is important to note

10   for the record on appeal it is not at as if the government

11   never offered to drop the 924 (c).

12             THE COURT:  I appreciate your saying that, but I also

13   think any such appeal about the guideline calculation would be

14   frivolous because the sentence that I intend to impose would be

15   the same whether I gave credit for acceptance of responsibility

16   or didn't give credit for acceptance of responsibility.

17             The guideline range, if I had given the two points

18   which I think is really the maximum that you could ask for

19   under the acceptance of responsibility, would have been 360 to

20   life.  If that had been the guideline range, I assure you it

21   would make no difference in the sentence I intend to impose.

22             MR. MILLER:  Thank your Honor.

23             With respect to 3553 (a), I will make a couple of

24   points.  We obviously discussed this at length in our

25   memorandum.  I would like to note a few things that actually

C5TJGAR1                          Sentence

1   your Honor touched upon just now, and that is the nature and

2   circumstances particularly of this offense.  This obviously

3   involved a very significant violent offense.  I am somewhat

4   troubled by the suggestion that Mr. Garcia didn't even

5   anticipate that anything would happen past a threat,

6   considering the fact that the victim was kidnapped at gunpoint

7   in Philadelphia and brought to the basement of a building in

8   Queens and held there for ransom, meaning the drugs or the

9   money.  And even if one was to put --

10              THE COURT:  Besides, when one goes down the road of

11   kidnapping, by the the very nature of the crime, the risk of

12   serious violence is, of course, present even without guns.

13              The argument is being responded to is tantamount to

14   saying ah, well, I drove my car at 100 miles an hour into a

15   group of people but I didn't intend to kill anyone.  This is I

16   think the classic definition of reckless disregard.

17              You set out to Kidnap someone, and it is all part of

18   the narcotics world famous for its violence, the likelihood

19   that it is going to be equivalent of an unpleasant business

20   meeting is zero, and the risk of violence is always present.

21              MR. MILLER:  Absolutely.  That was going to be one of

22   my points.  As your Honor is well aware, even putting aside

23   some of the cooperator testimony here at this trial which the

24   government would submit was credible and the government would

25   submit --

C5TJGAR1                          Sentence

1          THE COURT:  The court found the government's evidence
2     totally credible.

3          MR. MILLER:  Thank your Honor.

4          The calls indicate, including from Mr. Garcia, that
5     Mr. Garcia, when discussing this matter with Jeffrey, indicated
6     look, you're the one who got us all into this mess, you've got
7     your family into this mess.  It was a call in which he said
8     that.

9          Given the fact that, as your Honor noted, this is a
10    kidnapping involving narcotics, that guns were going to be
11    used -- in fact, Mr. Garcia while he was not convicted and
12    acquitted on the 924 (c) count, the government did present
13    testimony he was certainly present at a minimum.

14         THE COURT:  Let me ask you this.

15         Forgive me for interrupting, but I have another matter
16    after this one and I need to move this along a little bit.  The
17    thing that gives me the most pause is the sentence that Judge
18    Sullivan imposed.  How do you compare Mr. Garcia with
19    Mr. Batista?

20         MR. MILLER:  That was one of the points I was going to
21    get to.

22         THE COURT:  Get to it now.

23         MR. MILLER:  Unwarranted sentencing disparity?  That
24    was a considerable reduction off the guidelines.  I don't
25    recall the exact guidelines, offhand but I remember they were

C5TJGAR1                         Sentence

1     in the 300 some-odd range, if memory serves me correctly?

2                 THE COURT:  Yes.

3                 MR. MILLER:  Judge Sullivan noted it was a significant

4     discount off the guidelines as a non-guidelines sentence.  The

5     government believes that, as it presented at trial, that Mr.

6     Garcia was above, if you will, in the organization Mr. Batista.

7     Mr. Batista was Mr. Garcia's essentially right-hand guy, and

8     for the purposes of both the narcotics conspiracy in which he

9     was convicted and the kidnapping conspiracy he was convicted,

10    Mr. Garcia was directing this and had just as much a leader

11    position at a minimum of kidnapping.  Certainly with respect to

12    the narcotics conspiracy he was above Mr. Batista.  I don't

13    think there is any real dispute as to that, that Mr. Garcia

14    needs to be held accountable appropriately and certainly in a

15    way that avoids unwarranted sentencing disparity.

16                THE COURT:  Let me ask you one other question, which

17    is what about the defense request for a 11-month credit under

18    Section 5G 13 because of his incarceration or custody in

19    Queens?

20                MR. MILLER:  The government agrees with the Probation

21    Office on this, that Mr. Garcia should not be credited for that

22    time because he is in state custody for unrelated conduct.

23    Obviously, the judge has discretion on this, but we make the

24    point we don't believe he should be credited this time on that

25    amount.

C5tQgarS2                    Sentence

1              THE COURT:  All right.  Is there anything the

2        defendant wishes to say?

3              MR. RAY:  Your Honor, can I just fill in the record?

4              THE COURT:  Yes, of course.

5              MR. RAY:  Judge Sullivan's sentencing range was, I

6        think, included in the justification section of the probation

7        office's addendum, page 22.

8              THE COURT:  I have it here.  It was in the upper 300s.

9              MR. RAY:  376.

10             THE COURT:  376 to 449.

11             MR. RAY:  To 449.

12             THE COURT:  Yes.

13             MR. RAY:  I think that comes probably as a result of

14       60 month consecutive counts on the weapons charges added to

15       whatever the applicable sentencing calculation was on the

16       kidnapping charge.

17             Again, I have made the point, I just want it to be

18       clear, we think a sentence in excess of Mr. Batista's sentence

19       for Mr. Garcia is excessive.  Specifically, in that regard

20       addressing the factor of unwarranted sentencing disparity, I

21       think your Honor should take account of the theme that we had

22       throughout this case.  Narcotics were brought to the table by

23       my client, but what accounted for the kidnapping facts, the

24       things that occurred in Philadelphia and then back to New York,

25       were at Mr. Batista's direction:  His vehicle, his trap, his

C5tQgarS2                    Sentence

1    guns and his people.  That's why the sentence for Mr. Batista

2    is warranted and should be longer.  Mr. Garcia's sentence above

3    that, we believe, is excessive and not warranted.

4             THE COURT:  All right.  Did Mr. Garcia want to say

5    anything?

6             MR. RAY:  Yes.

7             THE COURT:  Let me hear from Mr. Garcia.

8             MR. RAY:  I believe he has a written statement if I

9    can hand it up to the Court.

10            THE COURT:  He can just read it aloud.  It probably

11   makes more sense.

12            THE DEFENDANT:  Your Honor --

13            THE COURT:  Hold on while it's translated.

14            THE DEFENDANT:  Your Honor, I wish to apologize to you

15   and to the American people for the bad actions which I have

16   committed.

17            THE COURT:  Let me hear the translation.

18            THE DEFENDANT:  Before God, you are the person who in

19   his name will deal with me, and that is why I ask God to fill

20   you with blessings, so that your Honor will be as benevolent as

21   possible, bearing in mind that I have a family to take care of.

22   These actions which I have committed cause me very much shame

23   and sadness as this is not the best example that I would like

24   to set for my children.  I hope that I can count on you to give

25   me one more chance to prove to you and to the American society

C5tQgarS2                    Sentence

1    and to my family how remorseful I am and to show you all that

2    God has taught me since I've been deprived of my liberty.

3    Thank you very much.

4              THE COURT:  Thank you.

5              Well, I think that it's somewhat hard to compare

6    Mr. Batista and Mr. Garcia.  In some ways each could be said to

7    be worse than the other.  It depends what you focus on.  But in

8    the end, I am persuaded that while there must be a

9    non-guideline sentence here for many of the reasons set forth

10   by able defense counsel, that somewhat more punishment is

11   required than was meted out to Mr. Batista because I really

12   cannot escape the conclusion based on the trial that above all

13   was Mr. Garcia, and so the sentence of the Court is that the

14   defendant is sentenced to 280 months in prison to be followed

15   by five years of supervised release on terms I will get to in a

16   minute.  No fine will be imposed because the Court makes a

17   finding that the defendant is not in a position to pay any

18   meaningful fine now or in the foreseeable future.  There is,

19   however, a $300 mandatory special assessment that must be paid.

20             I should mention before I go further that I have

21   chosen not to adopt the defense counsel's suggestion for the

22   eleventh month departure.  I agree with the probation office

23   that that is not warranted.

24             The terms of supervised release are that defendant

25   shall not commit any other federal, state or local crime; that

C5tQgarS2                         Sentence

1    defendant shall not illegally possess a controlled substance;

2    that defendant shall not possess any firearm or destructive

3    device; that the defendant shall cooperate in the collection of

4    DNA.  However, the fifth mandatory condition, the drug testing

5    condition, is suspended due to the imposition of a special

6    condition instead that I will get to in a moment.  There will

7    also be imposed the standard conditions of supervision 1

8    through 13.  They appear on the face of the judgment and will

9    be gone over with the defendant by the probation office when

10   the defendant reports to begin his period of supervised

11   release.

12          Finally, there are special conditions:  First, the

13   defendant will participate in an approved program for substance

14   abuse and alcohol abuse on the standard terms and conditions.

15          And, second, that the defendant within 72 hours of his

16   release from custody will report to the nearest probation

17   office, and he will be supervised by the district of his

18   residence.

19          Now, before I advise the defendant with respect to his

20   right of appeal, is there anything else we need to take up?

21          Anything from the government?

22          MR. MILLER:  Just that we are going to move to dismiss

23   open counts.

24          THE COURT:  All open counts, if any, are dismissed.

25          MR. MILLER:  Thank you.

C5tQgarS2                    Sentence

1          MR. RAY:  Your Honor, there is a distinction between

2    the departure that we asked for under 5G1.53 that your Honor

3    now has ruled upon.  Mr. Garcia also is concerned about credit

4    for federal time served.  I had assured him that that will be

5    accounted for by the Bureau of Prisons, but I wanted the record

6    to be clear.

7          THE COURT:  Yes.

8          MR. RAY:  In other words, he was in federal custody

9    beginning in November of --

10         THE COURT:  Yes, whenever he went into federal

11   custody, he gets full credit as you rightly told him.

12         MR. RAY:  Finally, I would ask, for Mr. Garcia's

13   benefit and for the benefit of his family, in view of the fact

14   that there are young children and travel issues involved, if

15   your Honor would recommend to the Bureau of Prisons -- I

16   understand it's not binding -- a facility close to the New York

17   City area.

18         THE COURT:  Yes, I will recommend that.  I cannot

19   order that, but I will recommend it.

20         MR. RAY:  That's it.  Thank you.

21         THE COURT:  Mr. Garcia, you have a right to appeal the

22   sentence.  Do you understand that?

23         THE DEFENDANT:  OK, sir.

24         THE COURT:  And if you can't afford counsel for the

25   appeal, the Court will appoint one for you free of charge.  Do

C5tQgarS2                    Sentence

1    you understand that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Very good.

4              Thanks very much.

5              (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25