UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------

UNITED STATES OF AMERICA

      v.                                       11 CR 989 (JSR)

WALTER GARCIA,

    *Defendant.*

----------------------------------------------------

# REPLY MOTION OF WALTER GARCIA FOR SENTENCE REDUCTION
## PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

Avrom Robin, Esq.
Law Offices of London & Robin
99 Park Ave. PH A/Suite 2600
New York, NY 10016
tel: 212-683-8000
fax: 212-683-9422
avrom@mindspring.com
a.robin@londonrobin.com

*Attorney for Walter Garcia*

October 24, 2020

Walter Garcia replies herein to the Government's Response in Opposition to Mr. Garcia's motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Garcia has about 12 years remaining on his sentence and has moved for a reduction in that sentence.

1. THE GOVERNMENT'S RESPONSE

By motion dated October 16, 2020, the Government opposes Mr. Garcia's motion.

Most importantly, the Government misreads Mr. Garcia's request for relief. Mr. Garcia does not ask for immediate release, in the form of a reduction of his sentence to time served. Rather, he asks for a reduction in his sentence, from the original 280 months on which he has already served over nine years, to a number of months that takes the present changed circumstances as set forth in his Motion and this Reply into account.

2. DISCUSSION

A. Points of Agreement

The Government agrees with Mr. Garcia, who will be 71 years old in three months, that his "age may place him at a heightened risk of severe illness should he contract COVID-19." *Response of the United States in Opposition to Defendant's Motion,* ECF doc. 87, at 1.[1] (Hereafter "*U.S. Response*").   The Government acknowledges that Mr. Garcia's body mass index (BMI) of over 30 is confirmed by his most recent BOP medical records. *Id.* at 5. Even at the time of his PSR in 2012 Mr. Garcia was listed at 206 pounds, so his obesity has been a long - standing issue and poses an increasing threat to his overall health as he ages. *PSR* at ¶ 65.

---

[1] I refer to the original page numbers at the bottom of the Government's response, not the ECF page numbers stamped on the top of that response after filing.

At 5'7", a healthy weight and BMI for Mr. Garcia would be about 155 pounds, with a BMI of 24. At his present weight of about 200 pounds, he bypasses the overweight range on the National Institutes of Health ("NIH") chart and lands well within the NIH obesity range. https://www.nhlbi.nih.gov/health/educational/healthdisp/pdf/tipsheets/Are-You-at-a-Healthy-Weight.pdf, visited on October 23, 2020.

B. Points of Disagreement

The Government argues that despite his "heightened risk of severe illness should he contract COVID-19, the § 3553(a) factors do not support his early release", *U.S.* Response at 1, and that "[t]his Court properly took account of the § 3553(a) factors when it sentenced the defendant to 280 months' imprisonment." *U.S. response* at 6.

The Government's argument is flawed because it ignores the Court's discretion to reevaluate the relevant § 3553(a) factors in light of the changed circumstances now present and available for consideration under § 3582(c)(1)(A) and *Brooker*.

Although the Government cites to numerous decisions denying sentence reductions based on § 3553(a) factors despite "the possible presence of 'compelling and extraordinary reasons' where the offense involved violent or serious conduct or where the defendant had multiple years left to serve on his sentence," *Id.* at 6-7, all of the cases it cites predate the Second Circuit decision in *United States v. Brooker,* --- F.3d ---, 2020 WL 5739712 (2d Cir. Sept. 25, 2020).

*Brooker* significantly changed the legal landscape by recognizing that the § 3582(c)(1)(A) statute gave the Court the flexibility to re – sentence somewhere between immediate release and no release, thus allowing a more balanced result. *See, United States v. Diego Rodriguez*, 00 Cr. 761-2 (JSR), ECF document 380, (S.D.N.Y. September 30, 2020) (Rakoff, J.)

    C.  Application of *Rodriguez* to Mr. Garcia

Indeed, it is this Court's decision in *Rodriguez* which provides the most useful framework and analysis for the instant case.

Like Mr. Rodriguez, Mr. Garcia was convicted after a trial, and now presents underlying health conditions that put him at a high risk of severe illness from COVID-19. *Rodriguez* at 7. Both defendants are obese.[2] In *Rodriguez*, as here, the Government conceded that that extraordinary and compelling reasons did exist. *Id.*

Also, as in *Rodriguez*, Mr. Garcia's incarceration has been harsher and more punitive than would otherwise have been the case, because the federal prisons, as prime candidates for the spread of the virus, have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal. *Id.* at 8-9 (internal citations omitted). This change in the conditions of incarceration, impossible to predict at Mr. Garcia's sentencing in 2012, supply another reason for reassessing now, eight years later, the appropriateness of the of the original sentence, because "the actual severity of [Rodiguez's] sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing." *Id.* at 9 (internal citations omitted).

---

[2] Unlike Mr. Rodriguez, Mr. Garcia is not diabetic.

This factor – a change in the conditions of incarceration -  applies equally to both defendants. Based on the experience of March 2020 through the present, when the infection numbers go up in the country at large, they eventually go up in the prisons, also. When Mr. Garcia submitted his initial motion in this case, on October 9, 2020, the daily number of new infections in the United States was around 40,000.  On October 23, 2020, only two weeks later, the United States set a single day record of over 85,000 new cases reported. Pennsylvania, where Mr. Garcia's place of confinement at FCI Loretto, is listed as in the group of states where cases are lower but going up. *New York Times,* "Covid in the U.S., Latest Map and Case Count," October 24, 2020. It is safe to assume that more harsh conditions are in the immediate future for Mr. Garcia at FCI Loretto, as the infection rates go up in Pennsylvania generally and among the staff at Loretto who reside in that state.

Mr. Garcia sent me on October 23, 2020 via CorrLinks email, as interpreted by a fellow inmate, the following report about present conditions at FCI Loretto:

> We are on a modified schedule.We get 2 hours of rec,yes we can walk the track.the weight room is closed off. Theres no organized sports taking place at this time,however we can play free rec basketball.The messhall is open however we only go to the mess hall with 1 other unit not the whole population eats together.Commissary is open with restrictions. Social visits have started again, however theres a lot of rules and restrictions no contact whatsoever, one can not greet your visitor with a hug before nor after the visit is over.Partial educations classes have open under a modified schedule. (punctuations in email preserved as received.)

I submit that when what *The New York Times* headlined on October 24, 2020 as the current "harrowing new corona virus surge" catches up with the prison population, as the last surge did, FCI Loretto will return to extreme lockdown conditions as it did in response to the first surge over the past summer.

In two at least two other additional ways, Mr. Rodriguez and Mr. Garcia differ. Mr. Rodriguez was convicted for his role in a brutal murder for which he was originally given a life sentence. Atlhough Mr. Garcia's crime of conviction, kidnapping, was extremely serious, fortunately for all and especially the victim, it resulted in no physical injury.

Also, Mr. Rodriguez's record of rehabilitation ("nothing short of remarkable," *Rodriguez* at 10) is more extensive than that of Mr. Garcia. Still, Mr. Garcia has made a strong showing, in his original motion, of significant progress during his nine years of incarceration. This includes numerous educational programs completed, and service to his fellow inmates as a referee in many field sports, and an excellent staff evaluation in his Program Review (previously submitted).

Both defendants have the strong support of friends and family to look forward to upon their release. Mr. Garcia has submitted both letters from family and a release plan with his initial motion. Also, Mr. Garcia is significantly older than Mr. Rodriguez, further lessening the chance that he would reoffend.

## CONCLUSION

Mr. Garcia presents the requisite strong and compelling reasons for a sentence reduction, based on the factors above, in addition to a significantly different § 3553(a) picture now when compared with the time of sentence. I ask the Court to exercise its discretion and allow him to return home to his family and begin his supervised release as soon as possible.

Respectfully submitted,

------/s/ via ECF----------
AVROM ROBIN

cc:     A.U.S.A. Danielle Kudla (via ECF)