KB43GARC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

           v.                           11 CR 989 (JSR)

WALTER GARCIA,

                Defendant.

------------------------------x
                                        New York, N.Y.
                                        November 4, 2020
                                        4:00 p.m.

Before:

                    HON. JED S. RAKOFF,

                                        District Judge


                        APPEARANCES

AUDREY STRAUSS
     Acting United States Attorney for the
     Southern District of New York
DANIELLE KUDLA
     Assistant United States Attorney

AVROM ROBIN
     Attorney for Defendant

ALSO PRESENT: Nancy I. Adler, Spanish Interpreter
```

1                (All parties appearing telephonically)

2                THE COURT:  This Judge Rakoff.  Would counsel please

3       identify themselves.

4                MS. KUDLA:  Good afternoon, your Honor.  This is

5       Danielle Kudla on behalf of the government.

6                MR. ROBIN:  Good afternoon, your Honor.  This is Avrom

7       Robin for Walter Garcia, who is on the line from FCI Loretto

8       with a Southern District interpreter who is also on the phone.

9                THE COURT:  Great.  Thanks for calling.  And thank you

10      for your papers on the motion for compassionate release.  The

11      papers I thought outlined the issues quite well, so I don't

12      need extensive oral argument.  But, if there's one or two

13      points that either someone felt had not been fully put forth in

14      the papers or that they want to respond further to, you may do

15      so.

16               Let me hear first from moving counsel.

17               MR. ROBIN:  Thank you, Judge.  This is Avrom Robin.

18      To be clear, Judge, I'm not asking for a sentence of time

19      served here.  I'm asking for a sentence reduction.

20               THE COURT:  Yes, I did understand that and I think

21      that was prudent on your part.

22               MR. ROBIN:  And I'm recognizing at the getgo, at the

23      outset here, the factors against the trial conviction, the

24      seriousness of the offense, kidnapping, to make it worse, a

25      finding at sentencing that Mr. Garcia played a leadership role.

1   As I pointed out, the only mitigation on that is that no one
2   was hurt, and that's more I think a matter of luck here than
3   anything else.
4            THE COURT:  Right.
5            MR. ROBIN:  On a remaining sentence of 12 years, a
6   sentence reduction can be balanced at least in part by an
7   increase in the present five-year term of supervised release.
8   Factors in favor here, these are on the record already, I am
9   just going it tick them off.  Age, health issues, he's now 70,
10  he's obese, he has high blood pressure.  The government
11  concedes there are extraordinary and compelling reasons, so it
12  comes down to the 3553(a) factors and how your Honor reassesses
13  them now.
14           The history and characteristics of Mr. Garcia have
15  changed significantly since his sentence eight years ago.  He's
16  built a good record of rehabilitation in prison.  He has no
17  disciplinary incidents.  He participates in a positive way in
18  prison life, and he benefits the other inmates by setting a
19  good example, as a referee on an official softball, basketball,
20  volleyball and soccer, and I think setting a good example is
21  important here, because someone of his age demonstrating the
22  importance of fair play and fair decisions, we can only hope
23  that that has a good effect on all the inmates.  That he was
24  encouraged by the prison staff to take a nursing assistant
25  certification tells us they think, they, the staff, he's got a

1   lot of potential for success after release.  And that coupled
2   with his strong family support system, he plans to live with
3   his daughter, a job with his son-in-law, all speaks well for
4   him.
5          Finally, the unforeseen harshness of incarceration as
6   a changed factor, what your Honor has called previously in
7   another case, the actual severity of the sentence as a result
8   of the COVID outbreak, exceeding what your Honor could have
9   anticipated at the time of sentencing.
10         So, on top of the seven months on almost total
11  lockdown Mr. Garcia has been through, there is the potential of
12  many more months of lockdown looming, given the dire
13  predictions from health experts about the spread of COVID in
14  the next two to three months.  So, I think some reduction of
15  sentence is clearly warranted here.  Thank you.
16         THE COURT:  Thank you very much.  That was very
17  helpful.  Let me hear from the government.
18         MS. KUDLA:  This is AUSA Danielle Kudla.  Your Honor,
19  I am just going to touch on points that have been modified
20  since our submission.  We rest in large part on the submission.
21  But I think it's important to note that the conditions at FCI
22  Loretto have remained virtually identical to what they were one
23  month ago, which is no infected inmates, and there is an
24  indication that Mr. Garcia's obesity can be managed at FCI
25  Loretto at this point in time.

1       I think on the need to provide punishment and promote
2  respect for the law, that is commensurate with the offense at
3  hand, our sentencing submission addresses that.  Regarding the
4  serious nature of this crime that was not only a kidnapping,
5  but also stemming from a large-scale drug transaction.  And it
6  was a kidnapping of not the person who swindled Mr. Garcia, but
7  rather his family member.
8       The point that I think might also be helpful to note
9  is the need for deterrence.  It is an interesting factor with
10 Mr. Garcia's age.  He is currently 71.  But he committed these
11 violent acts in connection with a large-scale drug conspiracy
12 at the age of 61.  So, it speaks to the fact that the risk of
13 age does not necessarily in this case negate the risk of
14 recidivism and the danger to community.  We've taken into
15 consideration the age at which this crime was committed as
16 well.  And then in the defendant's reply, defense counsel has
17 relied heavily on *United States v. Rodriguez*.  But I think --
18       THE COURT:  No surprise there.
19       MS. KUDLA:  I know.  Shocking that was cited
20 frequently.  The key factor in *Rodriguez*, and obviously the
21 Court knows this better than government counsel, but it seems
22 that the factor and dispositive issue there was overwhelming
23 evidence of his total rehabilitation over the course of 20
24 years that was supported not only by friends and family, but
25 also by 27 members of the BOP staff, and there was evidence of

1  a total rehabilitation as indicated by the Court.  And that is
2  what is missing from Mr. Garcia's case.  A truly rehabilitative
3  record similar to nature in *Rodriguez*.  And that's not to say
4  that Mr. Garcia's efforts in prison in any way are not
5  completely valid and wildly appreciative on the government and
6  also his family.  But it is just a different comparison to be
7  made that the government wanted to note on the record.
8        THE COURT:  Very good.  Anything else defense counsel
9  wanted to add?
10       MR. ROBIN:  Two points, Judge.  The government
11 suggests that Mr. Garcia's obesity can be managed.  I just
12 point out that the medical records shows that his weight has
13 been consistently high from the beginning of his incarceration,
14 and coupled with his age, I think that's a serious factor that
15 cannot be discounted.
16       And second, and finally, I do concede that, as I did
17 in my papers, that Mr. Garcia's record of rehabilitation is
18 markedly different or less strong than that of Mr. Rodriguez,
19 but in the same way the crime of conviction is a lot different,
20 Mr. Rodriguez's case was a vicious murder, and as I've said
21 before, and this is the last time I'll say it, luckily here, no
22 one was hurt.
23       So, I think it's for the Court to balance all these
24 things out.  Thank you.
25       THE COURT:  Thank you very much.  And thanks to both

1  counsel.  I am currently conducting a jury trial that will be
2  over at the end of the month.  So I will turn to this probably
3  first week of December and get you a decision then, but
4  probably not before that.  But I'm grateful to counsel for both
5  sides.  And that will end this proceeding.  Thank you again.
6  Bye-bye.
7           MR. ROBIN:  Judge, just one thing I'd like to get on
8  the record if I might.
9           THE COURT:  Yes.
10          MR. ROBIN:  This is Avrom Robin.  I want to convey
11 thanks on behalf of Mr. Garcia and myself to your law clerk,
12 Mr. Mandilk who has been extremely helpful, to AUSA Kudla who
13 has been extremely responsive and helpful, and to Counselor
14 Mack at FCI Loretto who has arranged numerous legal calls with
15 Mr. Garcia in a great, in a great way.  So I wanted to thank
16 those people on the record.
17          THE COURT:  That was very well taken on your part and
18 thank you for raising that.  I will sign off.  Bye-bye.
19          (Adjourned)