```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,           :
                                    :     11-cr-989 (JSR)
          -v-                       :
                                    :     OPINION & ORDER
WALTER GARCIA,                      :
                                    :
          Defendant.                :
                                    :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Ten years ago, Walter Garcia ordered two drug couriers to drive to Texas to pick up 15 kilos of cocaine. On the way back, Jeffrey, one of the couriers, stole the cocaine and absconded. Garcia and a co-conspirator countered by recruiting three people to kidnap either Jeffrey or his brother Kelvin. On March 23, 2010, while Garcia and his co-conspirator ate lunch, their three recruits kidnapped Kelvin from a Philadelphia street corner at gunpoint. They shuttled him to Queens, New York, in the back of a U-Haul and confined him in a basement. That night, Garcia and his co-conspirator contacted Jeffrey and offered to release his brother Kelvin in exchange for return of the cocaine. But before this happened, law enforcement found and freed Kelvin and arrested Garcia.

A jury ultimately found Garcia guilty of kidnapping, conspiracy to commit kidnapping, and conspiracy to distribute and to possess with intent to distribute cocaine. The Court imposed

1

a prison term reflecting the severity of the crime, 280 months. While this was a below-Guidelines sentence, at Garcia's age it was a serious one: on his projected release date in July 2032, he will be 82.

Now Garcia moves for a reduction of sentence, seeking so-called "compassionate release." Part of this application is premised on the risks and hardships imposed on prisoners as a result of the pandemic. While the federal Bureau of Prisons ("BOP") has overall done a better job than many state prison authorities in preventing major outbreaks of COVID-19, FCI Loretto, where Garcia is incarcerated, has not shared this success. More than a quarter of all inmates at Loretto have tested positive. At least 167 inmates - about one in five - are currently infectious, along with 22 staff members.[1]

Nevertheless, the Court concludes, based on the severity of Garcia's crimes, that releasing him now would contravene the sentencing factors laid out in 18 U.S.C. § 3553(a). However, because of the substantial health risks that Garcia faces at Loretto and the accompanying psychological toll, the Court finds that extraordinary and compelling circumstances warrant a partial reduction in Garcia's sentence. For the reasons that follow, the Court grants Garcia's motion in part and reduces his prison term

---

[1] BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last accessed Dec. 7, 2020).

from 280 months to 240 months, meaning that he will still have to serve 20 years or so for his very serious crimes.

## Legal Analysis

Garcia brings his motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction.

Although, as noted, this remedy is sometimes colloquially referred to as "compassionate release," actually, as the Second Circuit has explained, "compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reduction. A district court could, for instance, reduce but not eliminate a defendant's prison sentence . . . ." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020). And the Court has previously done so. United States v. Rodriguez, No. 00 CR. 761-2 (JSR), 2020 WL 5810161 (S.D.N.Y. Sept. 30, 2020)

A Court evaluating a motion under this statute must ask four questions: (1) has the defendant complied with the administrative exhaustion requirement, (2) has the defendant shown extraordinary and compelling reasons warranting a sentence reduction, (3) are

3

the 18 U.S.C. § 3553(a) sentencing factors consistent with a lesser sentence than that previously imposed, and (4) is there a particular sentence reduction consistent with the § 3553(a) factors that is also warranted by extraordinary and compelling reasons.[2]

---

[2] Because the statute says a court may grant compassionate release "after considering" the § 3553(a) factors if "extraordinary and compelling reasons warrant such a reduction," some courts have concluded that they should first weigh the § 3553(a) factors and only then determine whether there are extraordinary and compelling circumstances. E.g., United States v. Shakur, No. 82 CR 312 (CSH), 2020 WL 6482875, at *8 (S.D.N.Y. Nov. 2, 2020) ("The First Step Act requires me to consider 'the factors set forth' in 18 U.S.C. § 3553(a) before the Court is in a position to find whether Shakur has shown that 'extraordinary and compelling reasons warrant' a reduction of sentence under § 3582(c)(1)(A)(i)."). That order of operations is appropriate in some cases, but this Court does not read the statute to compel it. Rather, the Court reads the statute only to require that a district court not grant a sentence reduction motion until after it has weighed the § 3553(a) factors; it is up to the Court to determine in what order it evaluates the statute's requirements. Cf. Brooker, 976 F.3d at 237 ("[A] district court's discretion in this area – as in all sentencing matters – is broad.")

The statute also provides that a sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). However, as the Second Circuit explained in Brooker, the current Guideline and related Application Note pertaining to this issue are in certain respects outdated and "apply[] only to those motions that the BOP has made." 976 F.3d at 235. The Guideline "is not 'applicable' to compassionate release motions brought by defendants," such as the instant motion. Id. at 236. However, one aspect of those policy statements, relating to danger to the community, would be relevant in other cases because such an issue overlaps with the § 3553(a) factors. See United States v. Vargas, No. 88-CR-325 (VEC), 2020 WL 6886646, at *9 (S.D.N.Y. Nov. 24, 2020) ("[T]he Court must consider . . . the need 'to protect the public from further crimes of the defendant.' 18 U.S.C. § 3553(a)(2)(C). Before Brooker, in abiding by the Sentencing Commission's relevant

4

I. Administrative Exhaustion

Generally, a defendant must first satisfy an administrative exhaustion requirement by seeking compassionate release through the BOP. While the administrative exhaustion requirement is waivable in certain circumstances, see United States v. Haney, 454 F. Supp. 3d 316 (S.D.N.Y. Apr. 13, 2020), that point is irrelevant here because Garcia has exhausted his administrative remedies. He submitted a request for compassionate release to the Warden of FCI Loretto on April 3, 2020, and the Warden denied it on April 20. Garcia has not administratively appealed from that denial, but he nevertheless has satisfied the exhaustion requirement because 30 days have elapsed since Garcia submitted his request to the Warden. See 18 U.S.C. § 3582(c)(1)(A).

II. Extraordinary and Compelling Reasons

Second, a defendant must demonstrate "extraordinary and compelling reasons" supporting a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Given Garcia's age and medical condition, the Government concedes that "[t]he defendant satisfies the 'extraordinary and compelling reasons' inquiry for a reduction in

---

policy statement, the Court was also required to consider whether the defendant was 'a danger to the safety of any other person or to the community.' U.S.S.G. § 1B1.13. The Court considers these as largely synonymous . . . ."). Here, though, the Government has not argued that Garcia at his advanced age would present such a danger.

5

sentence under 18 U.S.C. § 3582(c)(1)(A)(i)." Gov't Opp. Br., ECF No. 87, at 8.

### III. The § 3553(a) Sentencing Factors

Next, the Court must weigh the factors listed in § 3553(a), the same factors the Court considers whenever imposing a sentence.

One group of relevant factors relates to the crime itself: "the nature and circumstances of the offense" and "the need for the sentence imposed . . . to reflect the seriousness of the offense [and] to promote respect for the law." 18 U.S.C. § 3553(a)(1)-(2). The Court's consideration of these factors is independent of any risk or hardship imposed by the pandemic. Garcia set out to kidnap someone in connection with a drug conspiracy, placing lives in jeopardy. Even setting aside the use of firearms, the risk of serious violence was readily apparent. Moreover, Garcia imperiled an innocent life simply to settle a score. And, as the Court found, Garcia was even more culpable than his co-conspirators.[3] Nothing about the nature or seriousness of that crime or about Garcia's culpability has changed in the intervening years.

The Court must also consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Here, too, little has

---

[3] The judges sentencing Garcia's co-conspirators imposed sentences ranging from 244 months' to 144 months' imprisonment.

6

changed. The defendant's age and some of his medical conditions heighten his coronavirus risk, as discussed below, but otherwise, his medical problems were, in effect, taken into account when the Court imposed its original sentence below the Guidelines. When the Court sentenced a man in his sixties to serve more than two decades in prison, it anticipated such maladies as, for example, Garcia's arthritis and dental issues.

What the Court did not anticipate was the coronavirus pandemic, and here the pandemic is relevant to consideration of other § 3553(a) factors, such as "the kinds of sentences available," "the need for the sentence imposed . . . to provide just punishment for the offense [and] to afford adequate deterrence to criminal conduct," and "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)-(3). Viewed through these lenses, the sentence Garcia is now serving looks materially different from the sentence the Court envisioned.

Some of those differences affect all inmates, such as the unusually severe conditions of confinement (such as constant lockdowns) necessitated by the need to reduce the risk of COVID infection in the confined prison conditions). But more importantly, <u>unlike</u> most inmates, Garcia, because of his advanced age (70 years old) and considerable obesity (BMI exceeding 30),

7

faces a heightened risk of serious illness or even death if he contracts the coronavirus. The Court plainly must consider the risk that Garcia could grow ill or die in custody when assessing the "kinds of sentences available," as well as whether a sentence reflects "just punishment" and whether the sentence will provide Garcia with needed medical care, training, and other correctional treatment. Furthermore, both the increased risks faced by vulnerable individuals like Garcia and the heightened restrictions imposed upon all prisoners during the pandemic may enhance the deterrent effect of prison sentences served during the pandemic by making the conditions of confinement harsher, both physically and psychologically, than they would otherwise normally be.

Balancing these and all the relevant § 3553(a) factors, the Court finds that while releasing Garcia now would be inconsistent with the severity of his crimes, some reduction in the length of the sentence is appropriate. In other words, if the Court were sentencing Garcia anew today, it would find that a term of somewhat less than 280 months' imprisonment would be sufficient, but no greater than necessary, to achieve the purposes of criminal sentencing.

IV. The Nexus Requirement

Finally, the Court asks whether there is a sentence reduction consistent with the § 3553(a) factors that is warranted by the extraordinary and compelling reasons. A motion for sentence

8

reduction can be granted only where there is a nexus between the two: the Court may reduce a defendant's sentence only if the "extraordinary and compelling reasons warrant <u>such</u> a reduction." 18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

While courts rarely consider this nexus requirement explicitly, it is obvious that the fact that the Court would have imposed a lower sentence if the pandemic conditions were in play at the time of the original sentence illustrates that here the nexus can be shown. But how much of a reduction it warrants is a very different inquiry, not subject to any Guidelines or other prescribed calculation.

Congress has, however, imposed one limitation. Specifically, as the Second Circuit explained, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation ... <u>alone</u> shall not be considered an extraordinary and compelling reason.'" <u>Brooker</u>, 976 F.3d at 237-238 (quoting 28 U.S.C. § 994(t)) (emphasis in <u>Brooker</u>). But here, while Garcia argues that he has shown evidence of rehabilitation (he has completed many programs in prison, regularly officiates sports games for FCI Loretto's recreation department, and reports no disciplinary incidents), he does not claim that this evidence alone constitutes an extraordinary and compelling reason warranting a reduction in sentence.

Rather, the essence of Garcia's argument is that the actual health risks attendant on the impact of coronavirus prison conditions on persons of his age and obesity, coupled with the additional physical and psychological severity imposed on him by the prison conditions arising from the very measures taken by the prison to reduce such risks, merit a sentence reduction.[4]

Putting this all together, the Court, as noted, concludes that if it were imposing sentence on Garcia afresh, with full foresight of these conditions, it would have sentenced him to 240 months' imprisonment rather than 280 months, and that the current extraordinary conditions therefore compel a reduction of his sentence by 40 months, to a total of 240 months.

For the foregoing reasons, Garcia's motion for a reduction in sentence is granted in part, and his sentence is modified to reduce the term of imprisonment from 280 months to 240 months. The other aspects of his sentence remain in full force and effect.

SO ORDERED.

Dated:  New York, NY
        December 8, 2020

JED S. RAKOFF, U.S.D.J.

---

[4] While Garcia also complains of high blood pressure, the evidence that he suffers from serious high blood pressure is spotty. And, as already noted, his complaints of arthritis and dental issues are irrelevant.